UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

PARVEEN KUMAR,

      Petitioner,

v.

ROBERT CERNA, et al.,

      Respondents.

No. 6:26-CV-099-H

## ORDER

The Fifth Circuit held recently that aliens who are present in the United States without previously being admitted by immigration authorities—also known as "applicants for admission"—must be detained under the INA. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). Parveen Kumar, a native and citizen of India, is one such alien, having illegally entered the United States over three years ago. His habeas petition, filed after the Fifth Circuit's decision in *Buenrostro-Mendez*, demands his immediate release based on the text of the INA, its implementing regulations, the Fifth Amendment, the APA, the Suspension Clause, and the *Accardi* doctrine. Dkt. No. 1.

In light of *Buenrostro-Mendez*, Kumar's claims based on the INA and its implementing regulations are foreclosed. His remaining claims fail on the merits. Procedural due process does not require his release. Due process is a contextual concept, and in the context of alien removal, it is a limited one. Congress determined that aliens like Kumar are not entitled to bond, but they are permitted to remain in U.S. custody and fight to remain here. That is more than sufficient process so far as the Due Process Clause is concerned. Kumar's frivolous equal-protection, Suspension Clause, and APA claims fail, too. And his *Accardi* claim is not cognizable in habeas.

Because the legal arguments and facts presented in the petition are either meritless or otherwise indistinguishable from those addressed in the Court's prior decisions denying relief, "it appears from the application that the applicant or person detained is not entitled" to a writ of habeas corpus. 28 U.S.C. § 2243. Thus, while the Court would ordinarily issue an order to show cause, it exercises its discretion to forgo that step here. *Id.*; *see Wottlin v. Fleming*, 136 F.3d 1032, 1034 (5th Cir. 1998). The petition (Dkt. No. 1) is denied.

1.    **Background**

In December 2022, Kumar illegally crossed into the United States at or near Lukeville, Arizona. Dkt. No. 1-3 at 1. After entering, he was encountered by U.S. Border Patrol and was placed into removal proceedings with a Notice to Appear. *Id.*; Dkt. No. 1 ¶ 8. The NTA charged him with removability as an alien "present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." Dkt. No. 1-3 at 1; *see* 8 U.S.C. § 1182(a)(6)(A)(i). Last month, he was taken into custody after ICE encountered him driving a commercial truck. Dkt. No. 1 ¶ 2.

Kumar is held without bond and neither requested nor received a bond hearing. *Id.* ¶ 4. That is because the Board of Immigration Appeals' opinion in *Matter of Yajure Hurtado* holds that aliens present in the United States without admission must be detained without

bond under Section 1225(b)(2)(A) of the INA for the duration of their removal proceedings. 29 I. & N. Dec. 216, 220 (BIA 2025).[1]

Kumar filed a petition for a writ of habeas corpus. Dkt. No. 1. The petition states six claims for relief. His first claim—ostensibly presented to preserve the argument for appeal—argues that his detention is unlawful under the INA and its implementing regulations. *Id.* ¶¶ 60–67. His second claim contends that his detention violates his rights under the Fifth Amendment's Due Process Clause. *Id.* ¶¶ 68–74. He asserts in his third claim that his continued detention without a bond hearing constitutes arbitrary and capricious agency action under the APA. *Id.* ¶¶ 75–84. Fourth, he claims that he is detained pursuant to a discriminatory classification in violation of the Fifth Amendment's equal-protection guarantee. *Id.* ¶¶ 85–94. In his fifth claim, he argues that the lack of individualized review for his claims violates the Constitution's Suspension Clause. *Id.* ¶¶ 95–103. Finally, he raises an *Accardi* claim, arguing that the respondents failed to follow their own regulations in arresting and processing him. *Id.* ¶¶ 104–13.

As mentioned above, the petition preserves for appeal a statutory claim foreclosed by the Fifth Circuit's decision in *Buenrostro-Mendez*, which agreed with *Yajure Hurtado* and upheld the government's mandatory-detention policy under Section 1225. *See* 166 F.4th at

---

[1] On February 18, 2026, the Central District of California purported to vacate *Yajure Hurtado*. *Maldonado Bautista v. Santacruz*, ___ F. Supp. 3d ___, No. 5:25-CV-1873, 2026 WL 468284 (C.D. Cal. Feb. 18, 2026). But as the Court explained in *Calderon Lopez v. Lyons*, the Central District lacks authority to enter such relief. ___ F. Supp. 3d ___, No. 1:25-CV-226, 2025 WL 3683918, at *10–14 (N.D. Tex. Dec. 19, 2025). Moreover, in a March 6 order, the Ninth Circuit stayed the Central District's vacatur pending a ruling on the government's emergency motion for a stay pending appeal. *Maldonado Bautista v. DHS*, No. 26-1044, Dkt. No. 5 at 2 (9th Cir. March 6, 2026). *Yajure Hurtado* binds immigration judges, meaning it would be "an exercise in futility" to seek a bond hearing. *Garner v. U.S. Dep't of Lab.*, 221 F.3d 822, 825 (5th Cir. 2000). Thus, Kumar's petition does not present an exhaustion problem. *Id.* For these reasons, insofar as Kumar believes he is entitled to relief on the basis of *Maldonado Bautista*, *see* Dkt. No. 1-1 at 2 (Proposed Show-Cause Order), he is mistaken.

498.  There, the Fifth Circuit turned to the plain language of Section 1225, which provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A).  The Fifth Circuit found "no material disjunction" between the phrases "applicant for admission" and "seeking admission," and thus concluded that all applicants for admission fall within Section 1225(b)(2)(A)'s grasp.  *Buenrostro-Mendez*, 166 F.4th at 502 (quoting *Garibay-Robledo v. Noem*, ___ F. Supp. 3d ___, No. 1:25-CV-177, 2026 WL 81679, at *5 (N.D. Tex. Jan. 9, 2026)).

Currently, Kumar is detained at the Eden Detention Center.  Dkt. No. 1 ¶ 1.

**2.      Legal Standard**

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2).  With 28 U.S.C. § 2241, Congress authorized federal courts to resolve habeas petitions, including in immigration-detention cases.  *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).  Habeas exists solely to "grant relief from unlawful imprisonment or custody."  *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976).  Thus, for the writ to issue, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995).  A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require."  28 U.S.C. § 2243.

### 3.    Analysis

As noted above, Kumar raises six claims in his habeas petition.  Dkt. No. 1 ¶¶ 60–113.  The claims run the gamut; they include a statutory claim under the INA, two different claims based on the Fifth Amendment, an APA claim, a claim alleging a violation of the Supsension Clause, and an *Accardi* claim.  *Id.*  As explained below, *Buenrostro-Mendez* forecloses Kumar's first claim.  Thus, the Court turns to his remaining claims.  The Court has considered whether the Due Process Clause[2] and the APA[3] entitle illegal aliens to release in numerous prior cases.  Even so, the Court considers the arguments raised in Kumar's petition to address whether he is entitled to release on any of his five remaining claims.  The answer is no.

### A.    Because the Court assumes jurisdiction over Kumar's petition, the Suspension Clause is not implicated.

As a preliminary matter, the Court exercises its statutory jurisdiction under 28 U.S.C. § 2241 to address the merits of Kumar's petition.  Kumar's assertion that the respondents have "categorically bar[red] all custody review" is therefore puzzling.  Dkt. No. 1 ¶ 103.  He does not explain, for example, which jurisdiction-stripping provision of the INA might be implicated by his claims, such that review would be unavailable.  Section 1252(g) "does not bar courts from reviewing an alien detention order, because such an order, while intimately related to efforts to deport, is not itself a decision to execute removal orders."  *Cardoso v. Reno*, 216 F.3d 512, 516–17 (5th Cir. 2000) (internal quotation marks

---

[2] *Higareda-Cano v. Noem*, No. 1:25-CV-225, 2026 WL 274495 (N.D. Tex. Jan. 30, 2026); *Goyo Martinez v. Villegas*, No. 1:25-CV-256, 2026 WL 114418 (N.D. Tex. Jan. 15, 2026); *Garibay-Robledo*, 2026 WL 81679; *Gomez Hernandez v. Lyons*, No. 1:25-CV-216, 2026 WL 31775 (N.D. Tex. Jan. 6, 2026); *Montelongo Zuniga v. Lyons*, ___ F. Supp. 3d ___, No. 1:25-CV-221, 2025 WL 3755126 (N.D. Tex. Dec. 29, 2025).

[3] *See, e.g.*, *Garibay-Robledo*, 2026 WL 81679, at *10.

omitted).  And the Supreme Court in *Jennings v. Rodriguez* rejected a broad reading of the INA's jurisdiction-stripping provisions because it would "make claims of prolonged detention effectively unreviewable."  583 U.S. 281, 293 (2018).  Seeing no merit to Kumar's Suspension Clause claim, the Court turns to the four remaining claims.  *See also Livas v. Myers*, 455 F. Supp. 3d 272, 278 n.9 (W.D. La. 2020) (noting that "no cause of action arises under the Suspension Clause itself").

### B.    *Buenrostro-Mendez* forecloses Kumar's INA claim.

Kumar challenges his detention as unlawful under the INA and its implementing regulations.  *Id.* ¶¶ 60–67.  But he is an "applicant for admission" within the meaning of Section 1225(a)(1).  Section 1225 broadly defines "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States."  8 U.S.C. § 1225(a)(1).  Kumar is an "alien."  He is "present in the United States."  And he "has not been admitted" because he did not "lawful[ly] ent[er] [the country] after inspection and authorization by an immigration officer."  *Id.* § 1101(a)(13)(A) (defining "admission" and "admitted").  As an applicant for admission, binding Fifth Circuit precedent requires that he be detained without bond under Section 1225(b)(2)(A).  *See Buenrostro-Mendez*, 166 F.4th at 498.

As for the INA's implementing regulations, even if Kumar's reading of the relevant regulations were correct, he is not entitled to relief.  Insofar as such regulations "contradict the plain text of [Section] 1225(b)(2)(A), the statute governs because 'a valid statute always prevails over a conflicting regulation.'"  *Benitez v. Bradford*, No. 4:25-CV-6178, 2026 WL

82235, at *1 (S.D. Tex. Jan. 8, 2026) (Eskridge, J.) (quoting *Duarte v. Mayorkas*, 27 F.4th 1044, 1060 n.13 (5th Cir. 2022)).[4]  Thus, Kumar's INA claim fails.[5]

### C.    The Fifth Amendment does not require the government to release Kumar.

#### i.    Procedural Due Process

Next is Kumar's claim that the government's refusal to provide a bond hearing violates the Due Process Clause of the Fifth Amendment.  Dkt. No. 1 ¶¶ 68–74.  He devotes only a few sentences to this claim, arguing that he has a "weighty interest in avoiding incarceration," and that his detention "without a meaningful opportunity to challenge confinement violates . . . core due process guarantees."  *Id.* ¶¶ 72–73.  He claims that the respondents' actions "violate[] his procedural due process rights."  *Id.* ¶ 5.  But he is not entitled to relief.

As an "applicant for admission," Kumar has "only those rights regarding admission that Congress has provided by statute."  *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020); *see Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative.").  With Section 1225, Congress set the procedural rights afforded to aliens who are present in the United States without admission.  "Read most naturally," Section 1225(b)(2)(A) "mandate[s] detention of applicants for admission until certain proceedings have concluded."  *Jennings*, 583 U.S. at 297.  No part of the statute "says anything

---

[4] The Fifth Circuit, for its part, held that "the government's past practice" of treating unadmitted aliens as subject to Section 1226(a) pursuant to those regulations "has little to do with the statute's text."  *Buenrostro-Mendez*, 166 F.4th at 506.

[5] Even if this Court were not bound by *Buenrostro-Mendez*, it would have reached the same result for the reasons discussed in its numerous prior decisions on this issue.  *Supra*, n.2.

whatsoever about bond hearings." *Id.* Accordingly, Kumar is not entitled to release as a matter of procedural due process.

### ii. Equal Protection

Kumar also argues that his detention violates his right to equal protection under the Fifth Amendment. Dkt. No. 1 ¶¶ 85–94. He claims that "[t]he government's treatment of [him] creates an unjustifiable disparity between him and similarly situated detainees who receive individualized bond hearings." *Id.* ¶ 89. It is a peculiar claim, considering that the primary objection to the respondents' detention policy is its over-inclusivity. *See Buenrostro-Mendez*, 166 F.4th at 508 (Douglas, J., dissenting) ("[T]he government today asserts the authority and mandate to detain millions of noncitizens in the interior . . . on the same terms as if they were apprehended at the border.").

The Supreme Court has interpreted the Fifth Amendment to "contain[] an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups." *Washington v. Davis*, 426 U.S. 229, 239 (1976). "Fifth Amendment equal protection claims against federal actors are analyzed under the same standards as Fourteenth Amendment equal protection claims against state actors." *Butts v. Martin*, 877 F.3d 571, 590 (5th Cir. 2017) (citing *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975)). And "[t]o establish an Equal Protection Clause violation," Kumar "must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Id.* (internal quotation marks omitted).

Kumar's argument fails many times over. He states that "[t]he government may not selectively apply immigration laws or policies in a manner that discriminates against a particular nationality or class of individuals without a rational and legitimate governmental

– 8 –

purpose." Dkt. No. 1 ¶ 86.  He briefly notes that he "is a citizen and national of India" who "lacks criminal convictions." *Id.* ¶ 88.  Because other similarly situated detainees have received bond hearings, he argues, the respondents' failure to give him a bond hearing is "arbitrary" and "lacks a rational connection to any legitimate governmental purpose." *Id.* ¶ 90.  He does not mention the alleged basis for the government's purported discrimination, nor does he "identify any other individuals or groups that he claims were similarly situated but received superior treatment." *Butts*, 877 F.3d at 590.

Nor could he.  To start, his argument is unclear as to which classes of aliens are relevantly similar.  The Court perceives two potential interpretations of Kumar's argument. Both are frivolous.

First, by "similarly situated," Kumar may mean factual similarity: aliens who "lack[] criminal convictions," a "record of violence or dangerous behavior," or otherwise might merit release on bond, were they subject to discretionary detention.  *Id.* ¶ 88.  But this argument merely rehashes the merits of *Yajure Hurtado* and *Buenrostro-Mendez*.  Those decisions held that such factual similarities are irrelevant for mandatory detention under the INA.  Rather, what matters is whether (1) an alien is "an applicant for admission" and (2) "the examining immigration officer determines" that the alien "is not clearly and beyond a doubt entitled to be admitted." *Buenrostro-Mendez*, 166 F.4th at 499 (quoting 8 U.S.C. § 1225(b)(2)(A)).  Far from arbitrary or discriminatory treatment, this classification "put aliens seeking admission lawfully on equal footing with those who entered without inspection." *Id.* at 508.  To the contrary, it would appear arbitrary and "strange to suggest that Congress . . . preserved bond hearings exclusively for unlawful entrants." *Id.*

Second, Kumar might be arguing that there are "similarly situated" aliens in a legal sense: those who have been detained pursuant to Section 1225(b)(2)(A), prevailed in habeas, and were granted release on bond. But *Yajure Hurtado* and *Buenrostro-Mendez* require the respondents' categorical application of Section 1225(b)(2)(A) to all applicants for admission. Kumar does not demonstrate how this creates impermissibly arbitrary or discriminatory treatment, nor does he argue that this statutory construction is a pretext for such treatment. Insofar as Kumar asserts an equal protection violation because aliens outside of the Fifth Circuit or the Northern District of Texas are treated differently from aliens in other circuits or districts, "such a claim is without merit." *Serrano v. Berkebile*, No. 3:08-CV-1587, 2009 WL 81017, at *3 n.2 (N.D. Tex. Jan. 9, 2009) (noting that jurisdictional differences like a circuit split do not create equal-protection violations).

Indeed, Congress passed the IIRIRA amendments precisely to end the differential treatment of similarly situated aliens by eliminating the so-called "entry doctrine." *Garibay-Robledo*, 2026 WL 81679, at *6. The entry doctrine allowed "aliens who snuck into the United States without inspection" to receive "the procedural and substantive protections afforded in deportation proceedings." *Id.* Meanwhile, "aliens who presented themselves to immigration officials for inspection . . . were subject to more summary exclusion proceedings." *Id.* (internal quotation marks omitted). By enacting the expansive definition of "applicant for admission"—the definition to which Kumar objects—Congress ensured the equal treatment of aliens, thereby "eliminat[ing] the previous incentives to enter the country illegally." *Id.*

Kumar's preferred construction of the INA would therefore result in far more disparate treatment of similarly situated aliens.  His frivolous equal-protection claim is untenable.

### D.    The APA precludes judicial review of Kumar's claim.

Kumar argues that "[h]abeas relief is warranted to remedy . . . unlawful agency conduct."  Dkt. No. 1 ¶ 84.  Section 704 of the APA states, in no uncertain terms, that "[a]gency action made reviewable by statute and final agency action *for which there is no other adequate remedy in a court* are subject to judicial review."  5 U.S.C. § 704 (emphasis added). Because Kumar requests habeas relief as the remedy for his APA claim, he unwittingly admits that there is, in fact, an adequate remedy outside of the APA.  Moreover, the Supreme Court recently held that "where an alien detainee's claims 'necessarily imply the invalidity of their confinement' these claims must be brought in habeas."  *P.B. v. Bergami*, No. 3:25-CV-2978, 2025 WL 3632752, at *9 (N.D. Tex. Dec. 13, 2025) (O'Connor, C.J.) (quoting *J.G.G.*, 604 U.S. 670, 672 (2025)).  The APA thus does not provide for judicial review of his claim.

### E.    Kumar's *Accardi* claim is not cognizable in habeas.

Finally, Kumar argues that the respondents failed to follow the "immigration-specific arrest and processing regulations" set out in 8 C.F.R. § 287.8(c).  Dkt. No. 1 ¶ 106.  "By arresting [him] without a warrant and without satisfying the regulatory requirements governing such arrests," he argues, the respondents "violated the *Accardi* doctrine."  *Id.* ¶ 112.  To remedy this violation, Kumar demands "his immediate release" from custody. *Id.* ¶ 113.

The *Accardi* doctrine requires agencies to follow their own rules and procedures.  *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures.").  The regulatory requirements for the arrests of aliens are set forth in 8 C.F.R. § 287.8(c).  "An arrest shall be made only when the designated immigration officer has reason to believe that the person to be arrested . . . is an alien illegally in the United States."  § 287.8(c)(2)(i).  And "[a] warrant of arrest shall be obtained except when" the officer with authority to arrest "has reason to believe that the person is likely to escape before a warrant can be obtained."  § 287.8(c)(2)(ii).

Merits aside, Kumar's *Accardi* claim "is inapposite in a petition for habeas relief." *Huynh v. Noem*, No. 4:26-CV-017, 2026 WL 694481, *3 (N.D. Tex. Mar. 12, 2026) (O'Connor, C.J.).  Writs of habeas corpus are "available to correct the denial of fundamental constitutional rights, but [they] may not be used to correct mere irregularities or errors of law."  *Wooten v. Bomar*, 267 F.2d 900, 901 (6th Cir. 1959).  "The Fifth Circuit has confirmed in other contexts that the failure of officials 'to follow their own policies, without more, does not constitute a violation of due process,' making a writ of habeas corpus generally not available."  *Nguyen v. Noem*, 797 F. Supp. 3d 651, 664 (N.D. Tex. 2025) (quoting *Iruegas-Maciel v. Dobre*, 67 F. App'x 253, 253 (5th Cir. 2003)).  In other words, habeas exists solely to "grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose."  *Pierre*, 525 F.2d at 935–36.  It is "not like an action to recover damages for an unlawful arrest or commitment, but its object is to ascertain whether the [alien] can lawfully be detained."  *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923).

Kumar does not explain why his detention—which is mandatory under 8 U.S.C. § 1225(b)(2)(A)—is rendered unlawful by virtue of the alleged regulatory noncompliance. He states, without a supporting citation, that "[c]ontinued detention based on an arrest that contravenes binding regulations is itself unlawful." Dkt. No. 1 ¶ 110. And he asserts that habeas is an "appropriate vehicle to remedy detention that results from an agency's failure to follow its own regulations," citing *Accardi*, 347 U.S. at 267–68 and *INS v. St. Cyr.*, 533 U.S. 289, 301–05 (2001). *Id.* ¶ 111. But *St. Cyr* and *Accardi* merely recognized the availability of habeas to "answer[] questions of law that arose in the context of discretionary relief." 533 U.S. at 307 (citing *Accardi*, 347 U.S. 260). They did not turn the Great Writ into a free-wheeling vehicle for challenging all manner of regulatory violations.

Therefore, the Court concludes that Kumar's *Accardi* claim is not cognizable in habeas. *See Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) (explaining that when a petitioner's claim will not necessarily spell speedier release, it does not lie within the core of habeas). Because Kumar is subject to mandatory detention as a matter of binding Fifth Circuit precedent, *see Buenrostro-Mendez*, 166 F.4th at 498, nothing about the purported regulatory violation calls into question the validity of his confinement.

### 4.    Conclusion

In short, Kumar, as an "applicant for admission," is properly detained without bond under Section 1225(b)(2)(A). *Buenrostro-Mendez*, 166 F.4th at 498. The Fifth Amendment does not require his release in these circumstances, nor does the APA, Suspension Clause, or the *Accardi* doctrine. Thus, the petition for a writ of habeas corpus (Dkt. No. 1) is denied.

The Clerk of Court is directed to serve this Order electronically on the United States Attorney's Office for the Northern District of Texas pursuant to the current Service of Process Agreement for federal habeas petitions under 28 U.S.C. § 2241.

So ordered on March 31, 2026.

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE